## CHAPMAN *v.* SUCCESSION OF WILSON.

*(Circuit Court, D. Louisiana.   January, 1881.)*

1. **BILL TO SET ASIDE SETTLEMENT—FRAUD—FAILURE OF CONSIDERA-TION—LACHES.**—In May, 1867, Bradley, Wilson & Co., being largely indebted to Chapman, and having become financially embarrassed, transferred to Walker, agent of Chapman, by way of compromise, and in full settlement of their debt, *inter alia*, the notes of one Prewitt, an insolvent, secured by a marriage settlement made between Prewitt and wife before marriage. The notes were indorsed "without recourse except as to the consideration," and Chapman executed a release discharging the firm from all liability upon their indebtedness. This compromise was promoted and advised by Walker, an attorney, and mutual friend of both parties, who had drawn up the marriage settlement, and was himself also secured thereby on a debt due him from Prewitt. At that time a suit was pending to set aside the marriage settlement as fraudulent and void as against the unsecured creditors of Prewitt, to which suit Bradley, Wilson & Co., Walker, and others were parties defendant.

    In 1874 a decree was rendered in this suit, sustaining the marriage settlement and dismissing the bill. In December, 1870, another suit was begun for the same purpose in a United States circuit court by Prewitt's assignee in bankruptcy, and that court, in April, 1878, made a decree declaring the marriage settlement fraudulent and void. Both decrees were appealed, the former to the supreme court of the state, the latter to the supreme court of the United States, and these appeals are both still pending.

    *Held*, upon the bill filed by Chapman, October 15, 1879, to set aside the settlement of May, 1867, upon the ground of fraud, mistake, and want of consideration, that the complainant, by the lapse of twelve and a half years, had allowed his claim to become stale, and had waived his right to assert the same.

2. **LACHES.**—*Held, further*, that the laches of the complainant were not excused by the fact that he claimed not to have discovered the alleged fraud until December, 1870; and by the further fact that the question of the validity of the marriage settlement was pending, during the whole period, in both the state and circuit courts.

3. **FRAUD—INSUFFICIENT EVIDENCE.**—*Held, further*, that the mere circumstance that the firm, by compromise with their creditors, and by a favorable turn in the value of their property, ultimately succeeded in saving a considerable surplus, would not furnish sufficient ground for setting aside the settlement of May, 1867.

4. **FRAUDULENT CONCEALMENT—INSUFFICIENT EVIDENCE.**—*Held, further*, that the mere fact that Chapman was not aware of the existence of the suit in the state court to set aside the marriage settlement, and

that it was not mentioned at the time the compromise was effected, did not show that there was any fraudulent concealment of the existence of such suit.

5. MISREPRESENTATION—MARRIAGE SETTLEMENT—ALLEGATION OF VALIDITY.—*Held, further,* that the validity of the marriage settlement as against the creditors of Prewitt, not provided for in it, was a question of law resting in opinion, and not a question of fact resting in evidence and representation;. and, therefore, that when it was alleged to be valid, it was so alleged as a matter of belief only, and did not constitute a misrepresentation of fact.

6. MARRIAGE SETTLEMENT — GUARANTY OF VALIDITY. — *Held, further,* that the mere transfer of the Prewitt notes did not constitute a guaranty of the marriage settlement by which they were secured.

7. CONTRACT—FAILURE OF CONSIDERATION—RESCISSION.—*Held, further,* that the litigation in relation to the marriage settlement must be brought to a close, and the decree of nullity completed, before the settlement of May, 1867, could be rescinded upon the ground of failure of consideration.—[ED.

In Equity. Suit to set aside a settlement upon the ground of fraud, mistake, and want of consideration.

BRADLEY, C. J. Reuben Chapman, the complainant in this case, formerly governor of Alabama, and a lawyer by profession for a long time prior to the late civil war, and to some extent during the war, had dealings, as a planter in Alabama, with the firm of Bradley, Wilson & Co., commission merchants and bankers, of New Orleans, who had a branch house at Huntsville, Alabama. Before the war commenced the firm had become largely indebted to Chapman, and the debt was somewhat increased afterwards. Their dealings being very extensive, and many of their assets proving worthless, they became financially very much embarrassed. In May, 1867, whilst in this condition, their account with Chapman showed a balance due to him of $23,650.29, which they proposed to compromise and settle by transferring to him a claim which they held against one Richard Prewitt, consisting of two notes drawn in 1861, and then past due, amounting, with interest, to $20,136.23, and an open account amounting to $1,231.71, and a draft against one Nimmo for $150.75. The claim against Prewitt was secured by a provision in a marriage settlement made on the twenty-seventh day of April, 1866, between Prewitt and his wife before marriage, by which cer-

tain lands therein conveyed were appropriated—*First*, to the satisfaction of Prewitt's indebtedness to Bradley, Wilson & Co., and after that to certain other designated purposes. A transfer to Chapman of this security was embraced in Bradley, Wilson & Co.'s proposition for a settlement with him, as Prewitt was known to be insolvent, and the only value of his notes and indebtedness consisted in this supposed security.

Chapman consulted on the subject of said proposition L. P. Walker, Esq. of Huntsville, Ala., a lawyer of standing and character, who had previously at various times been the attorney of both parties, and who on this occasion (as he testifies) acted as the mutual friend of both, but not as the attorney for either. He gave it as his opinion that the security was a valid one, he having drawn up the marriage settlement and being acquainted with the entire transaction, and being himself thereby secured in reference to a debt due from Prewitt to him. Chapman thereupon consented to the proposed arrangement and the transfer was made accordingly, the notes being indorsed to Walker as agent of Chapman at the latter's request, but indorsed "without recourse except as to the consideration;" and the interest of Bradley, Wilson & Co. in the security created by the marriage settlement, and in the open account against Prewitt, being assigned to Walker in like capacity as agent for Chapman; and the latter, in consideration of said transfers and assignment, executed a paper releasing and discharging Bradley, Wilson & Co. from all liability in reference to their indebtedness to him. The present suit is brought to set aside this settlement, and to make the estate of Wilson (one of the firm of Bradley, Wilson & Co., now deceased) liable for the whole amount due, as though no settlement had been made. Chapman never received any money from the securities transferred to him. The Nimmo note was worthless at the time, Nimmo being at the time insolvent, and dying soon afterwards. The marriage settlement, which was the principal thing relied on, was attacked by other creditors of Prewitt, and sought to be set aside as being fraudulent and void as against them.

A suit for this purpose was brought by one Lile, in Decem-

ber, 1866, in the chancery court of Lawrence county, Alabama, against Prewitt and his wife, Bradley, Wilson & Co., and Walker and others. This suit was pending when the settlement with Chapman was made, and the defendants had filed their answers therein. A decree was rendered in 1874 sustaining the marriage settlement, and dismissing the bill. In December, 1870, another suit was commenced for the same purpose by one Robert H. Wilson, Prewitt's assignee in bankruptcy, in the circuit court of the United States for the northern district of Alabama; and that court, in April, 1878, made a decree declaring the marriage settlement fraudulent and void. Both of these decrees were appealed, the former to the supreme court of Alabama, and the latter to the supreme court of the United States, and these appeals are still pending; so that the ultimate fate of the security which was assigned to Chapman in May, 1867, is yet undetermined. The bill in this case was not filed until the fifteenth day of October, 1879, more than 12 years after the transaction took place which it assails. It seeks to set aside the settlement on the grounds of fraud, mistake, and want of consideration. It alleges that Bradley, Wilson & Co., at the time of the settlement, and as an inducement thereto, represented themselves to be insolvent, when, in truth, they were not insolvent; that they represented the security contained in the marriage settlement to be good and valid, when, in fact, it was fraudulent and void; and that they concealed the fact that a suit had already been instituted against Prewitt and themselves to set the marriage settlement aside. It alleges that the complainant Chapman was ignorant of the facts, and was deceived by these representations and concealments, and was thus induced to make the settlement, which he would not have done had he known the truth. The bill is filed against the succession of Wilson, as before stated, and prays that the settlement of May, 1867, may be set aside, and that the complainant may be admitted as a creditor of the succession, and may have a decree for the payment of his entire claim against Bradley, Wilson & Co., with the accumulated interest.

The defendants, who are the widow and executors of Wil-,

son, have filed an answer denying all the charges of the bill, and setting up the defence of prescription of 10 years. Formerly, by Civil Code of Louisiana, (art. 3507,) the action for nullity or rescission of contracts, testaments, etc., was prescribed by five years, where the party entitled to sue was in the state, and by 10 years if he were out of it. ·But by the Revised Code of 1870, (art. 3542,) the time is reduced to five years in all cases, without regard to plaintiff's residence, subject, of course, that the time commenced to run only from the date of discovering the error or deception complained of as the cause of nullity or rescission.

Although courts of equity are not strictly bound by the local laws of prescription or statutes of limitations, yet they generally follow the analogy of those laws, and refuse to enforce claims that have become stale by the lapse of the prescribed period. In cases, however, of cognizance peculiarly equitable, regard is always had to the force of special circumstances. "There are cases," says Mr. Justice Story, "in which the statutes would be a bar at law, but in which equity would, notwithstanding, grant relief; and, on the other hand, there are cases where the statutes would not be a bar at law, but where equity, notwithstanding, would refuse relief. But all these cases stand on special circumstances, which courts of equity can take notice of, when courts of law may be bound by the positive bar of the statutes." Eq. Jur. § 64*a*. Again: "It is a most material ground, in all bills for an account, to ascertain whether they are brought to open and correct errors in the account *recenti facto*, or whether the application is made after a great lapse of time.   *   *   *   In matters of account, although not barred by the statutes of limitations, courts of equity refuse to interfere after a considerable lapse of time from considerations of public policy, from the difficulty of doing entire justice when the original transactions have become obscure by time and the evidence may be lost, and from a consciousness that the repose of titles and the security of property are mainly promoted by a full enforcement of the maxim, *vigilantibus non dormientibus jura subserviunt.*" Id. § 529.

These remarks are as applicable to bills for setting aside a settlement on the ground of fraud and concealment as they are to bills for opening a stated account. They are strongly applicable to the present case. The complainant, in his bill, in order to obviate the objection of lapse of time, places himself on the ground that he did not discover the fraud practiced on him until December, 1870, when the assignee in bankruptcy of Prewitt filed his bill to set aside the marriage settlement, and made the complainant a party to it. And yet, after this, he waits nine years longer before filing his bill; and now, at the end of twelve and a half years after the transaction took place, after the death of the parties and witnesses, and all the changes that are consequent upon the lapse of time, he comes into court and asks its equitable relief.

The allegation that he did not discover the fraud until 1870, (even if it could avail,) as might be expected after this long delay, is only sustained by the complainant's own testimony. Mr. Walker testifies that he does not know when Chapman first learned of the pendency of the first suit, (brought by Lile,) but his recollection is that he knew of it before the commencement of the second suit, (by the assignee.) Mr. Bibb, one of the firm of Bradley, Wilson & Co., being examined as a witness in reference to the settlement with Chapman, denies that any suit was pending on the subject of the marriage settlement, or that he made any representations in regard to it. What else but the utmost vagueness of recollection could be expected, even in those who participated in the transaction, after the lapse of so many years? The complainant himself is responsible for this state of things. He admits that he waited nine years after discovering the alleged fraud before taking any steps to substantiate it, or to procure the redress to which it entitled him. His excuse is that the question of the validity of the marriage settlement was pending and undecided in the courts during that period, and he could not be expected to proceed in the assertion of his rights until that question was settled. This plea cannot avail the complainant. The fraud which he alleges was practiced on him did not depend on the decision which the courts might

make as to the validity of the marriage settlement. He says he discovered the fraud in 1870. He should have repudiated the settlement at once, and taken proceedings to have it set aside whilst the facts were still fresh in the minds of all parties. He evidently preferred to speculate on the result. If the marriage settlement was sustained, he would stand by the settlement with Bradley, Wilson & Co.; if not sustained, he would fall back on the charge of fraud and concealment. By electing to await the results, and postponing for so many years any proceedings for establishing the fraud and setting aside the settlement, the complainant has allowed his claim to become stale, and has waived his right to assert it.

But I am not satisfied from the evidence that any misrepresentation or concealment was practiced on the complainant. As to the alleged representation of insolvency, the weight of evidence is that the pecuniary affairs of Bradley, Wilson & Co. were in such a state of embarrassment and uncertainty in May, 1867, that they might well have supposed, as Mr. Bibb, one of the partners, testifies they did suppose, that they were really insolvent, and could only hope to settle with their creditors by compromise and the transfer of such assets as they had. If, by such compromises and a favorable turn in the value of their property, they afterwards succeeded in saving a considerable surplus, this circumstance would not only not be sufficient to set aside the compromise made by them when they really supposed they were insolvent, but it would not be a just ground for any reflection on their conduct as men of business. If this view is correct, the case upon its merits is reduced to a consideration of the questions relating to the Prewitt security contained in the marriage settlement. The question of the alleged concealment in not disclosing the fact that a suit was pending at the time of the settlement, calling in question the *bona fides* of the Prewitt marriage settlement, has already been adverted to. We have only the evidence of Governor Chapman himself to establish such concealment, and that evidence only amounts to this: that he was not aware of the existence of the suit, and that it was not mentioned in the transaction. This does not show that there

was any concealment. The matter may not have occurred to the parties. Mr. Walker seems to have been perfectly confident of the validity of the marriage settlement, and of the futility of any efforts to assail it, and he may not have regarded Lile's suit as of any importance. If mentioned, he may have so expressed himself to Governor Chapman when consulted about the marriage settlement; if not mentioned, it may not have occurred to him. A reference to it may have been made, and may easily have escaped the complainant's memory. If satisfied with Walker's views at the time, the details of their conversations may have passed out of his memory. The lapse of time comes in here as an important factor on the question of recollection and the weight of evidence.

Then, as to the alleged representations about the validity of the marriage settlement, there is not a particle of evidence to show that any representations were made which the parties did not at the time honestly believe to be true, or that any facts were represented different from what they were. The validity of the marriage settlement as against creditors of Prewitt, not provided for in it, was a question of law resting in opinion, and not a question of fact resting in evidence and representation. When it was alleged to be valid, it was so alleged as a matter of belief only. No misrepresentation of facts is set out in the bill, and none is established by the proofs.

As Mr. Walker acted as the mutual friend of both parties in the settlement his testimony is important, and an abstract of it will perhaps give a clearer view of the transaction, as it actually occurred, than any statement which can be made,— somewhat fragmentary, it is true, being drawn out by interrogatories, but, nevertheless, clear and to the purpose. Speaking of the settlement of May 12, 1867, Mr. Walker says that he did not consider that he represented either of the parties in a professional capacity; that the assignment of the security was made to him, as agent, at Governor Chapman's request, but for what reason he does not know; that he thought it a good settlement for both of them, and.

probably so expressed himself to both; that his belief is that Governor Chapman took the transfer because he considered Bradley, Wilson & Co. to be financially embarrassed, and in doubtful condition; that he drew the marriage settlement himself, and believed it valid, and still thinks so, and when the settlement was made he expressed that opinion to Governor Chapman; that he has cognizance of no fact impugning the settlement between the parties.

On cross-examination he testifies that he had been the counsel for Bradley, Wilson & Co. for many years; that he had also often been counsel for Governor Chapman, and is still his counsel in some pending cases; that, as he understood, the adjustment of the debt due from Bradley, Wilson & Co. to Governor Chapman, as it was made, was upon the idea that Bradley, Wilson & Co. were financially embarrassed, and not otherwise able to arrange it; that the proposition of the settlement came from them, and the reason assigned by them for the proposition was their inability to pay the debt in money; that Bradley and Bibb, who were then in Huntsville, where the settlement was made, represented the firm to be in embarrassed circumstances and unable to pay their indebtedness in cash, and that this was the best settlement they could make; and that Governor Chapman believed this to be so, or he would not have made the settlement, as he was desirous of collecting the debt; that Bradley, Wilson & Co. were reputed in Huntsville to be in great financial embarrassment; that Richard Prewitt was largely insolvent at the time the settlement was made, and the only value attached to his notes and account, which were transferred to Governor Chapman, grew out of the provision made for his indebtedness to Bradley, Wilson & Co., in the marriage settlement of May, 1866; that he does not remember that any representations were made by Bradley Wilson & Co. to Governor Chapman, at the time of the settlement, in regard to the lien created by the marriage settlement, as to its *bona fides* and validity, but that he, Walker, told both parties that, in his opinion, said lien was *bona fide* and valid, and that it protected Prewitt's indebtedness to Bradley, Wilson & Co. to the extent of the value

of the lands specifically dedicated to that purpose; that he is satisfied Governor Chapman would not have made the settlement but for the belief that said debt was thus protected; that the marriage settlement has been sustained in a chancery court of Alabama, and an appeal from that decision is now pending, and has been pronounced fraudulent and void by a decision of the circuit court of the United States, and an appeal from that decision is also pending; that he, Walker, does not know when Governor Chapman first learned of the pendency of the former suit, but his recollection is that he knew of it before the commencement of the latter suit; that in the settlement he acted as the mutual friend of both parties, and not as attorney of either, and that, from his belief in the validity of the marriage settlement, he should have advised Governor Chapman to accept the settlement, notwithstanding the pendency of the chancery suit, had that been adverted to.

If to this evidence of Mr. Walker we add that of Mr. Bibb, one of the firm of Bradley, Wilson & Co., who testified very fully as to their embarrassment and supposed insolvency; of their efforts to compromise with their creditors in good faith; of their desire to secure Governor Chapman in particular, and their offer to turn over to him the Prewitt claim, and of their firm belief in the validity of that claim,—it would be asking the court to go a great way to make a decree declaring the transaction void on the ground of misrepresentation, upon the evidence of the complainant alone, given so many years after the happening of the events, however upright in motive and free from all intention to distort the facts we may concede that evidence to be.

The remaining ground of relief is the failure of the consideration of the compromise. *First*, Bradley, Wilson & Co. did not guaranty the claim against Prewitt, but expressly declined doing so. Chapman took it at his own risk. The notes were indorsed "without recourse," showing that the transfer was made and accepted without any guaranty, at least so far as relates to the responsibility of Prewitt. Besides, the evidence shows that Prewitt was notoriously insolvent, and therefore it is not reasonable to suppose that Brad-

ley, Wilson & Co. intended to guaranty the payment of his notes. But it is contended that the validity of the marriage settlement, by which the payment of the notes was secured, was guarantied in law by the mere transfer thereof. It is now laid down as a general rule that the sale of a chattel by the English law implies an affirmation by the vendor that the chattel is his, and therefore he warrants the title, unless it be shown by the facts and circumstances of the sale that the vendor did not intend to assert ownership, but only to transfer such interest as he might have in the chattel sold. Benjamin on Sales, (2d Ed.) 523. Formerly the rule of *caveat emptor* was stated to be the general one, and it may be so still, theoretically; but slight circumstances have always sufficed to raise an assertion of ownership, amounting in effect to a guaranty of title, and it has been justly said that in all ordinary sales the party who undertakes to sell exercises thereby the strongest act of dominion over the chattel which he proposes to sell, and thereby is understood to affirm that he is the true owner. *Erle*, C. J., in *Eichholtz* v. *Banister*, 17 C. B. N. S. 708. And it may be conceded that, in ordinary cases of delivery and acceptance of a specific thing in satisfaction or compromise of a debt, there is an implied understanding or condition that the debtor guaranties his authority to dispose of the thing in that way, and that a failure in this behalf will place the parties back in their original relations to each other. But there can be no doubt that when a contrary understanding is had a different consequence will follow.

The question in each case will be, did the creditor take the thing out and out, or did he only take it conditionally? In the present case, Bradley, Wilson & Co. were seeking to compromise with their creditors. They had various assets to dispose of, some good, some doubtful, some bad; though which were good, which doubtful, and which bad was in many cases unknown. These were all they had to offer. Their object was to get a discharge from their obligations. It is not presumable, to begin with, that they meant to guaranty the validity or value of the various assets which they turned

over to their creditors. If they so intended, there would be something to indicate such intention; but if they took an absolute discharge, as was done in this case, the contrary must be inferred. The fact that in transferring the notes they did it "without recourse, except as to the consideration," and that this is taken notice of in the transfer of the marriage settlement, is a clear indication of what they intended in the whole transaction. They evidently intended to guaranty nothing except the consideration. They offered Governor Chapman the claim against Prewitt as it stood. He must judge for himself as to its validity and value; so far as they were concerned it was all right. He evidently understood the matter in this light. He investigated the claim. He consulted Mr. Walker in regard to it; satisfied himself as to its validity and value, and agreed to accept it. It seems clear to me that Governor Chapman took the claim with its collateral security at his own risk, and that his discharge of Bradley, Wilson & Co. was intended to be in fact, as it was in form, absolute and unconditional. But, aside from this consideration, it does not yet appear that the security is not valid. The decree of the circuit court has been appealed from. The litigation is not ended. On the question of failure of consideration, the eviction or decree of nullity must be complete before it constitutes a ground of rescission.

Looking at the whole case, as it is presented by the pleadings and proofs, it seems to me that the bill must be dismissed, with costs.

Let a decree be entered accordingly.